Good morning, Your Honor. May it please the Court, my name is Mark Kinghorn. I represent the appellant in this case, Alex Lee, Inc. This is a lawsuit that's ongoing. We have not yet gone to trial and won't for several more months to come. But we're here today because of an order that the District Court entered on October 20, 2017, a little more than a year ago, and only a couple of weeks after this lawsuit was first filed. And that order entered a preliminary injunction that prevents my client, Alex Lee, from, among other things, exercising its contractual right to terminate a lease agreement that it has with the appellee, in this case, Swift Beef. Could you help me out by just telling me what specific relief you're seeking? Certainly, Your Honor. We're asking for a reversal of the order entering the preliminary injunction, vacate that order. I think it's up to the Court as to what instructions might go back to the District Court if you agree with our position. And that's what I'm asking. I'm asking for you to sort of give me the universe of the relief that you're seeking. Sure. I think the narrowest resolution of this case, if you were to agree with our position, would be to vacate the existing injunction order and remand with instructions that the Court consider the provisions within the lease agreement that we think the Court did not consider, and correct the legal errors that are in the current order, and then reconsider the plaintiff's request for an injunction applying the correct legal standard. Quite frankly, Your Honor, we think that it would be appropriate, given the factual record that was presented to the District Court, for this Court to vacate the order and remand with instructions that a preliminary injunction cannot be justified on the existing record. But that, we recognize, would be a more expansive exercise of this Court's power. But you would be comfortable with an order that vacated and instructed the District Court to consider the applicability of the other termination provision? We would be, Your Honor. And that's because that really is the essence of the legal error that we believe happened here, is that the Court simply didn't consider all of the law that is relevant to the issue here. And by doing so, the Court did not adequately address the four factors that the Supreme Court has instructed the District Court to consider in the Winter case. So, we would be happy with just an order that vacates the existing injunction. We realize that that would still leave us with some work to do, but we are confident, based on the record, that if the Court were to consider the application of Section 18.3 of the lease, and not just 18.2, and if the Court were to consider the factual record, as it did at the initial hearing, that the only reasonable conclusion that the Court could reach is that an injunction is not warranted under these circumstances. Well, and why didn't you mention 18.3 to the District Court in your letter, asking for, or in your motion for reconsideration? I know you brought it up at the hearing, and I think you brought it up later in a letter, but it wasn't in your motion for reconsideration. We brought it up three times, actually, Your Honor, and only twice with the Court. We did specifically invoke 18.3 in a letter that we consider to be a default letter that was sent to Swift Beef on August 23rd of 2017. We cited 18.3 in our opposition to the plaintiff's motion for preliminary injunction, and then we discussed it at the hearing. The reason we didn't raise it in the request for reconsideration is, quite frankly, because the order from which we were seeking reconsideration didn't have any commentary at all about the notice issue. The notice issue is something that only came out in the second preliminary injunction order, which corrected the first. So we were trying to focus on what we saw as the errors that were made in the first injunction order. It didn't address notice, and so we didn't feel that it was appropriate to raise an issue that the Court didn't address in seeking reconsideration of that order. So, Your Honor, we've laid out the grounds in our brief as to why we think that the two of them here with my time this morning. The first, in which we think is the clearest basis of error, is the likelihood of success element of that test. And there's really three points here. First is one that we've already been addressing. We think it is clear from the Court's order that the Court simply did not address the question of 18.3 and the impact of 18.3. 18.3, as we see it, is a more specific default determination provision that was negotiated for and inserted into the lease, quite frankly, to address exactly this type of situation where Alex Lee, as the landlord and the owner of this building, and hopefully the recipient of meat products that are being produced in the building, finds itself unable to do so because Swift Beef is unable to produce those products efficiently and at competitive cost, which is what is required by Section 3 of the Purchase Agreement. And 18.3 says that when Section 3 of the Purchase Agreement is violated, Alex Lee has the right to terminate the lease immediately and without notice. That was negotiated. It was agreed by the parties. And notwithstanding the fact that we had been citing 18.3 in Section 3 of the Purchase Agreement from the beginning, the Court didn't even mention 18.3 in its order. Instead, it went straight to 18.2 and found that we had not provided the notice that's required by that section. That may be a factual error, which we have not raised on this appeal, but we think that it was a legal error not to address 18.3 at all. And if the Court were to do so, then it would find that notice is simply not an issue. And that was the only basis on which the Court found that the plaintiff is likely to succeed on the merits of its anticipatory breach claim. In fact, and this goes to the second point on likelihood of success, the Court did make a finding, or at least drew a conclusion in its injunction order, that we think completely precludes any likelihood of success finding if 18.3 is properly considered, if the contract is properly construed. That finding is the Court said that the defendant, Alex Lee, has presented evidence that casts serious doubt on whether the plaintiff, Swift Beef, has fully upheld their obligations under the terms of the agreement to wit that plaintiff may have failed to use commercially reasonable efforts to produce case-ready goods efficiently and at competitive prices. Remarkably, that latter part of that sentence is taken straight from Section 3 of the Purchase Agreement, which, of course, triggers 18.3 of the lease, not 18.2. So the Court has essentially acknowledged, we believe, what we also agree is factually true, which is that there is a dispute here. It won't be resolved until the case is resolved. But the plaintiff has fallen far short of being able to show, as a matter of injunctive relief, that it's likely to succeed on the merits of any of its claims against Alex Lee, including its defense to Alex Lee's belief that Swift Beef has violated Section 3 of the Purchase Agreement and that that justifies termination under 18.3 of the lease. And the final mistake, legal error, that I'd like to just point out on the likelihood of success element is really sort of a fundamental legal issue about how anticipatory breach works in commercial disputes such as the one that we have here, and in particular, in contracts where there is a right of termination when one party breaches. The position that Swift Beef has advanced and which the District Court appeared to agree with is that although there is a dispute, which we fully recognize as well, as to whether Swift Beef has defaulted, as Alex Lee has alleged, under Section 3 of the Purchase Agreement and potentially also other sections of the Purchase Agreement, that when Alex Lee invoked its contractual right to terminate and not having done so, but threatening to do so if the matter couldn't otherwise be resolved, that that became an anticipatory breach. And quite frankly, we just think that that is legally incorrect, that threatening to invoke your contractual right is not an anticipatory breach because it doesn't involve a repudiation of the contract, which is an essential element of anticipatory breach under North Carolina law, certainly, and also, I believe, the law of most other states. Did the District Court say that? Did it make that finding that simply threatening to evict was an anticipatory breach? No, Your Honor, and the Court didn't quite get to that point because the Court was really focused on the notice issue and actually found that the only basis for concluding likelihood of success, but if that legal question was determined correctly in the first place, if the Court had correctly found that just invoking your contractual right can't give rise to an anticipatory breach claim, then the Court couldn't have come to the conclusion that the notice issue could have potentially triggered the anticipatory basis for reversal in addition to the other two grounds that I've previously mentioned because it would lead to the same result. It would lead to the Court concluding as a matter of law that the plaintiff is unable to prove a likelihood of success on its anticipatory breach claim. As just an illustration of the point that we're trying to make here, there's a case that Swift Thief has actually relied on quite a bit in this case and that the judge cited in the illustrative, it's certainly not binding, it's an unpublished district court case from Judge Thornburg in the Western District of North Carolina. It's the Fairfield Resorts case and the facts of that case are illuminative, I think. What happened there is there was a homeowners association that had a lease agreement with a property manager and it was an unusual lease where there wasn't a clear payment of rent by the tenant property manager and so the homeowners association wrote to the property manager saying that because there's no rent, we are taking the position that the lease is a nullity. Not that you have breached the lease, but we're taking the position that the lease is a nullity and you have to remove your property within 30 days or we'll take it and store it. That's a clear repudiation. That's exactly what a repudiation of a contract looks like. It's when a party says, look, there's an agreement here, but we don't think it's binding. We don't think that we have any obligations under it. We don't think that we're bound by it. That's what repudiation looks like. That is not this case though because this is a case in which Alex Lee has never taken the position that the lease or the purchase agreement are a nullity. Alex Lee has never taken the position that they're not binding agreements. In fact, Alex Lee has taken the position that it is Swift Beef that has breached its obligations under the purchase agreement and that triggers Alex Lee's contractual right to terminate the lease. That was part of the bargain that the parties entered into with each other. So the way we view anticipatory breach law and the way it should be applied in this case is that what Alex Lee did cannot be an anticipatory breach because Alex Lee is not repudiating. Alex Lee is simply trying to invoke its contractual right and as a matter of law, that's not repudiation. We think that the Viglas case and the Ricketts case that we cited in our brief from the U.S. Supreme Court support that position as well. And then finally, with the limited amount of time that I have available in my initial part here, I want to turn briefly to the irreparable harm element as well, which we think also calls for reversal of the court's injunction order. Again, this error we think traces back to the court's misapplication of the Fairfield Resorts case. In fact, the district court didn't cite anything other than that case as a legal basis for a finding of imminent and irreparable harm here. We have argued in the district court and in our briefs here that Swift Beef cannot suffer an imminent harm because there is a process that Alex Lee has indicated that it will go through and that we believe we're required to go through in order to deprive Swift Beef of its property interest. And that until we go through that process, Swift Beef will not lose its property interest and therefore doesn't face an imminent risk of harm. Or even if that process were to move fairly quickly, Swift Beef would only lose its property interest after it has had a chance to make its arguments, raise its defenses, present its evidence, do whatever it can to convince the appropriate finder of fact that Alex Lee is not entitled to terminate the lease and therefore isn't entitled to regain possession of the property. The court essentially discounted whole argument by looking to the Fairfield Resorts case in which I fully recognize that the district court there did enter an injunction notwithstanding the fact that the landlord's lawyer, the homeowners association's lawyer, had raised the possibility that the homeowners association might go through the summary ejectment process. The difference is that that never happened when the homeowners association was discussing this issue with the property manager in the first place. The homeowners association just said the lease is a nullity, get your property out or we'll seize it. It was only after the case was in front of the judge that the lawyer came in and said, you know, we could potentially use the summary ejectment process. And Judge Thornburg said, I'm not going to rely on hypothetical possibility, I'm going to look to what the parties actually said to each other. And what the homeowners association actually threatened to do was exercise self-help. Alex Lee has never threatened to exercise self-help. We've been very clear from the beginning that if we are to terminate the lease, then we would go through the process, the judicial process of seeking possession of a right to repossess the property. And only at the end of that process would SWIFT be deprived of its property interest. So, so again, Your Honor, we, we, we think that this injunction was simply improperly considered in the first place. We think that the court didn't apply the correct law, didn't look to the right contractual provisions in reaching its conclusions, misinterpreted other law, including the law regarding anticipatory breach, that there are legal errors that have quite frankly, led to the place that we are now. And it's depriving Alex Lee of an important contractual right that it negotiated for. Alex Lee's hands are tied while we go through this process. And that shouldn't be the case. We ask that the injunction be vacated and however you choose to instruct the court, that it at the very least be vacated and remanded for further consideration. Thank you. Thank you. And do you have some rebuttal time reserved? Mr. Bailey. Good morning. May it please the court. My name is Clayton Bailey and together with Tom Hooper, we represent the Applebee's Swift Beef Company. The court should affirm because the trial court did not abuse its discretion in entering a preliminary injunction order in this case. In fact, I'm going to go through and address each one of the points distinguished counsel just made. And we're going to be able to show this court that the amended order in this case is legally sound based on the record that the court had before it. And it's in fact, very artfully drafted by a pragmatic jurist who was trying to get a practical result. This judge was able to clear the chafe from the seed and he found out what was going on. And this is a situation where Alex Lee about a year before Swift had a right exercise an option to buy that plant for $35 million, Alex Lee wanted to change the deal. And so that's the reason why the court determined from a practical standpoint, let's go ahead and impose the injunction. Let's just keep the status quo until the trier of fact has an opportunity to sort this out. Now, counsel just mentioned that the court made an error because it never addressed 18.3. I'm here to tell you that Alex Lee never activated 18.3 to begin with. If you look at the brief and the argument today, Alex Lee. Is that a finding that the district court made? No. In fact, well, let's talk about what the district court said and we'll go to the language that was just mentioned. On page 400 of the record, the court says in his amended order, while defendant has presented evidence that casts serious doubt on whether plaintiff has fully This is the artful drafting. He says what plaintiff may have failed to use commercially reasonable efforts to produce case-ready goods efficiently and at competitive prices. That is not relevant to the issue of whether defendant has anticipatorily breached the agreement. He used the word may. That's speculative. If he had found as a preponderance of the evidence that Alex Lee had shown that we had in fact breached section three of the purchase agreement, which only deals with pricing. Okay. The clause deals with pricing. He would have said that there would have been a likelihood, but he used the word may. I have that language in front of me and I guess I'm having difficulty reading into it quite all of what you're saying. It doesn't seem to me that he, his analysis, the court's analysis just seemed to focus entirely on 18.2. So I'm not sure I can extrapolate from that language. Help me understand how you can extrapolate from that language. I think what he's saying here is 18.3 was never triggered because there wasn't enough evidence in the record to show that we, or I should not say we, but Swift violated section three of the purchase agreement. That's what he's saying. And so he didn't have to even go to that. What's important is, is he didn't have to recite 18.3? No. He doesn't even have to go there because the evidence in the record doesn't even lend itself to even going in that step. But let me, let me just say this. If this Court wants to address it, it's a legal question. It can be considered de novo, and this is the Pashby case from this Court, where an issue wasn't addressed in a preliminary injunction order, I believe, and the Court said it's a legal issue. We can address it and we can affirm for any reason in the record. In this case, the Court can look at whether 18.3 applies, and I invite you to look in the record and find evidence where 18.3 was triggered. There's a gaping hole in the record here. So you want us to decide into, in the first instance, whether 18.3 was triggered? It sounds like you're saying. No, Your Honor. I don't think you even have to go there. Well. But if the Court wants to, it wants to look at it for itself because it's a de novo question. But how can it, how can we not go there if it's an alternative basis? Sure. Because it wasn't, the Court can satisfy itself if it wants to. But again, the fact of the matter is, is there's a gaping hole in the record. There is no evidence activating 18.3, and which goes to Section 3 of the Purchase Agreement. I think it's very important to look at Section 3 of the Purchase Agreement. It deals with pricing. It's two sentences. The first sentence has, it has two tines. And basically, it says if we produced meat, SWIFT produced meat above 400,000 pounds, what you have to look at is the cost based under a methodology under Exhibit C, which is 10 factors. And these factors include trim credit value, agreed yield percentages, yielded meat costs. Alex Lee never put any evidence in the record dealing with that issue. And here's the reason why. Right, right. But it flips, it seems to me you're flipping the analysis. In order to get the injunction, the Court has got to give the injunction, the Court has got to analyze the winner factors. And it has to analyze what the evidence is of success on the merits. And certainly, whether there will be some success on the merits and whether irreparable harm is likely is affected by whether there is a remedy under 18.3 on the part of Alex Lee to proceed, isn't it? Well, I mean, how can the Court have adequately considered the winner factors if the Court didn't consider whether there was a violation under another section of the lease? Sure. It's because there was no evidence in the record to trigger an 18.3 analysis. Well, I think the question is who has the burden of proof with respect to obtaining extraordinary relief? And you can't rely on the absence of evidence. You have to show that there was a likelihood of success on the merits and that entailed justifying relief under the provisions of the statute that allow Alex Lee to terminate. Sure. And I appreciate that. And we have the burden of proof. I agree with that. But the fact that the record is devoid of evidence, I'm not sure how that helps you. Okay. No, no, no. And it's my fault. It's my failure. I'm not communicating well. We put into evidence through our witness, Adam Bode, that number one, we did not violate 18.3 because he says in his declaration, in his testimony during the hearing, in our verified complaint, that we never failed, refused, or weren't able to produce meat, the case-ready meat, under the contract. He also says that we also used commercially reasonable efforts to produce case-ready meat, which is the second sentence of Section 3 dealing with pricing. We met our burden. The burden then shifted to the other side to say — Well, but the district court didn't make that, those findings. And to the extent it made any had met whatever burden they had to show that you weren't complying with terms of the agreement. I hear you. But you could also say that court didn't go through every provision of that contract and say, well, this was met, this was met, this was met. Okay? Well, there are only two provisions that deal with termination, correct? Well — Two provisions are there — The Purchase Agreement has its own — the Purchase Agreement has its own termination provisions, which is Section 20 of the agreement, which also talks about giving us notice and an opportunity to cure. The other point I wanted to make is this, and I think this is very important. When the court wrote what he wrote about there's been casting a serious doubt on whether we've fully upheld our obligations under the terms of the agreement and that we may have failed to use commercially reasonable efforts to produce case-ready goods efficiently, I think it's very important to look at what the court also said in the transcript of the hearing. He thought that this was a situation, because he smelled it out correctly what was going on, that the parties should go to mediation. In fact, that's an entire section toward the end of the amended order. And if you look at page 325 of the record, he says, in negotiation, it's not good to have one side be given an advantage by the court one way or the other. And what he was trying to do in his language there was he was trying to signal to the court or to the parties, I don't want any of you guys to think this is in the bag just because I'm granting a preliminary injunction. Y'all need to resolve this. He's a pragmatic. Well, that's all well and good, but he needs to apply the law correctly before he gets mediation. Oh, but Your Honor, he did. And that, again, is because the only, the only. How can you say that when he suggests that the evidence casts serious doubt on whether or not you were compliant with the terms of the agreement, but then he says it's not relevant because the other side failed to give notice. Because if we breach the other provisions, like we, for example, didn't provide enough quality or the quantity of the meat wasn't what it should have been under Sections 4 and 5 of the Purchase Agreement, we're entitled, we're entitled to notice and opportunity to cure. But there's no requirement of notice and, in fact, in its sole discretion, Alex Lee can terminate the lease immediately if you fail or are unable to produce products in compliance with pricing terms. With pricing terms. Exactly. Pricing. And, again, pricing was not brought up by Alex Lee in this case. Where is there anything in this record that suggests irreparable harm? You know, I think what's being lost here is the, it seems to me in your argument, is the fact that a preliminary injunction is an extraordinary remedy. And we have to, we have to see not only that your client may be suffering damages, but that there is irreparable harm. And where is in this record any evidence of that? Sure. Out of this plant, we, SWIFT not only produces case-ready meat for Alex Lee, but two other major customers, Kroger and Food Lion. Over a hundred million dollars worth of revenue is generated out of that plant. Sure, then they get their damages in court. What's irreparable about that? Oh, well, what is irreparable, Your Honor, is the fact that it would disrupt or disturb our business relationships. We'd lose our goodwill. It would impact our reputation with those folks. A lot of damages in a lawsuit, I agree, but what's irreparable? Lose our goodwill. Lose our, impact our reputation. The other issue is it's interfering with our quiet enjoyment of the lease. That's all irreparable harm. But the climate enjoyment of the lease, could our, the agreement specifically provided that it could be terminated immediately without notice? And to go back to that language that you quoted to us, the district court noted that Alex Lee presented evidence that casts serious doubt on whether you fully upheld your obligations under the agreement, specifically that you may have, may have failed to use commercially, commercially reasonable efforts to produce case-ready goods effectively and at competitive prices. That does not suggest, in fact, it suggests to the contrary, that you did not present a likelihood of success on, on your right to terminate on that cost provision, which is encompassed in 18.3. Pashby v. Delia states that we don't have to show likelihood of success with certainty. Well, this suggests that you haven't, not only is it not with certainty, if anything is the case, Alex Lee has shown serious doubt about whether you could do it at all. And under other provisions, under other provisions of the purchase agreement or the lease, we may have breached that, those provisions, and we're entitled to notice and an opportunity to cure. Section 3, which is what 18.3 triggers, only deals with pricing. And if you look at what Alex Lee is complaining about, do their, not even a representative. That line specifically refers to effectively and at competitive pricing. Yeah, may. And again, I go back to the word may. That is speculative. There may be a little evidence out there, but that doesn't defeat the fact that we have a likelihood finding. Or we met our preponderance of the evidence that we would prevail on our anticipatory repudiation claim. Your Honor, I would also say this. What this all boils down to is Alex Lee's complaints about quality, and it's best reflected here. It's page 307 of the record. This is Mr. Van Parys who testified, who isn't even a representative of Alex Lee. He says, and we're having a ton of issues with quality. I have no choice at this point. I cannot put quality of our product at risk. I cannot. Quality does not give Alex Lee the right to automatically terminate the agreement. A quantity issue is Section 5 of the purchase agreement, which entitles us to a right of notice and an opportunity to cure. There is one last thing I wanted to address. Let me ask just a follow-up on this. Let me read you this sentence of the district court's amended order and ask you a question about it. This is a page. I can't tell what page it is, but in any event, it says, he says, even if the court accepts defendant's version of events entirely, that is that there was evidence presented that your client wasn't providing meat efficiently and at competitive prices. He says, the court says, to wit that plaintiff's performance has been deficient. Plaintiff has been able to present compelling evidence that defendant's threat to terminate the lease for that deficient performance was never preceded by the written notice. So doesn't that suggest that the court simply fundamentally overlooked the whole basis of this argument that notice wasn't required? And isn't that by itself reason enough to send us back and get him to look at the evidence anew, applying the proper provisions of the agreement? I mean, that doesn't mean that you're going to lose. You're going to get to present evidence. No, I hear what you're saying, Judge Diaz. And I disagree. I think what he's saying is, is based on what he's got before him, what he has seen, I believe he's, what he's saying is 18.3 has not been triggered. I'm looking at the entire. That's a rather oblique way of saying it. I understand, but I will also say this to the court. If the court is not satisfied, the court has a right to review de novo a legal question under PASB. And the record is what the record is. And the pricing provision of Section 3 was never triggered. This is a point I'd like to make. I know I just got a little bit of time here. I don't know. What do you mean it was never triggered? What do I mean by that? Exactly. Yeah. Again, it was, we had put on our evidence that we had satisfied 18.3 in Section 3, so it wasn't triggered. It was incumbent on Alex Lee to come forward with a preponderance of the evidence and show, oh, but 18.3 was triggered here because we, being swift, had violated the pricing provision of the purchase agreement. And therefore, Your Honor, all of our evidence overwhelms what Swift Beef has said. And as a result, we have a right to immediately terminate the agreement. So when I say trigger, that's what I mean. We satisfied that issue of the contract. It was incumbent on Alex Lee to come forward with evidence, and they didn't do it. And here's the point. The reason why they didn't do it, and they could have never have done it, is because Alex Lee didn't have an employee or officer come before the court and testify either by declaration or even at the preliminary injunction. Well, Mr. Bailey, let me, I thought I heard you say something that I don't necessarily agree with. You said that we have the ability to consider the facts anew. But, I mean, we're reviewing this preliminary injunction for an abuse of discretion, and it's the district court's first inclination to find facts. It's not our obligation to find facts. I agree. So doesn't this counsel that we send it back for him to make those findings? If I said that, I'm wrong. I think what I was saying is this is a legal question, 18.3, and it can be reviewed de novo. Right. But then you went, you launched into the facts to try to convince us that under the facts as you see them, that your client did not breach that provision of the agreement. That may be correct, but is it our role to find that? Well, you don't have to find it. It's just, and maybe I'm mistaken here, but I believe that the court can look at the record based on the law and determine for any reason in the record to affirm. The court doesn't sit in judgment of orders. It sits in judgment of judgments. That's right out of the Pashby case, and I probably botched that a little bit. But that's what they're saying. You don't look at the order. You look at the entirety of the judgment. If I could just bring up one point, and I blame myself here, but I wanted to point out a case for the court that we did not have in our briefing, and it all goes to this issue of irreparable harm and that there's this adequate remedy because we could have gone through the summary ejectment process. First off, there's no case law from the Fourth Circuit in North Carolina that we could have find that when you've got a situation like this that's a complex commercial case where it's not just a simple landlord-tenant relationship but the lease also involves a situation where there's an option to purchase the property like here and also the situation where it's tied to a purchase agreement that the summary ejectment proceeding should apply. The case I wanted to point out was this. It seems to indicate that a summary ejectment proceeding, there would need no jurisdiction over this Morant's Piano Company, Inc. v. Kincaid case, 424 Southeast 2nd, 671-673, Court of Appeals case there in North Carolina at 1993. It indicates that summary ejectment proceedings only apply to where you only have a simple landlord-tenant relationship. I would also point this out. I don't see any reason why Swift Beef should have to lie supine and wait till Alex Lee takes the first shot in this case. Swift had bona fide claims against Alex Lee and the district court in this case had diversity jurisdiction. So just because this summary ejectment proceeding may be out there, that doesn't indicate that Swift has an adequate remedy of law and that the winner factors aren't applied. I would also say this in the last few seconds that I have is the district court also indicated a concern of this type of case in a summary ejectment proceeding given the fact that it's a state court judge without law clerks and things like that. Again, I think he's being very practical and pragmatic. For the reasons that we argue in our brief and that I've argued here today, we ask that the court affirm because the trial court did not abuse its discretion. Thank you very much. Your Honors, if I may make just a couple of brief points in response. First of all, there was a lot of discussion there about Section 3 of the Purchase Agreement and I do think that most of the fact finding as to whether a violation of Section 3 of the Purchase Agreement has happened or not has not yet happened. It didn't happen as part of this injunction order and it would be for a later day. But I do want to just correct the record on a couple of things. First of all, if you look at Sections 3 of the Purchase Agreement, it does talk about pricing. That is an element to it. But it also has as the final part an obligation on the part of Swift Beef to produce product that Alex Lee orders competitively or efficiently and at competitive prices. Those are not the same thing necessarily. They may be related to each other in some circumstances. Also, as to pricing, quite frankly, Alex Lee did present evidence as part of the record that was before the court on the pricing requirements. Those allegations and evidence were presented through the declaration and the testimony of Mr. Van Peris who testified before the court and who talked about how one of the breaches that we believe happened here is that there were labor costs that were properly attributable to other customers of Swift Beef that were being passed to Alex Lee. That affects the cost of goods sold. That gets factored in to the pricing calculations that are allowed by Section 3 of the Purchase Agreement. If we are correct that that happened and that that affected the pricing that Alex Lee was charged for the products it was purchasing, that would be a violation of the pricing provisions in Section 3 of the Purchase Agreement. So I just want to correct the record that all of that was before the court. There was evidence going both ways. We'll concede before the court. But that goes to the second point. This is, as you recognize, this is the plaintiff's burden of proof. The law could not be more clear that on preliminary injunctions, it is the plaintiff's burden of proof to show likelihood of success, to present substantial evidence of likelihood of success. I don't think it's even a preponderance of the evidence standard. I think it's more than that. I think the law has made it clear that unless the court reaches a conclusion that the plaintiff is likely to succeed on its claims, then an injunction should not be entered. And the language that we have been discussing at length from the court's injunction order, I think, is fundamentally inconsistent with the conclusion along those lines. And then the final point that I want to make goes to the summary ejection process. And I think much of this is beyond what you would need to consider in order to dispose of this case. But just to be clear, the summary ejection process in North Carolina is a statutory creation. There is a process that the parties would have to go through. It moves fairly quickly, but there are rights of appeal and there are multiple levels of review before a landlord seeking repossession of property can obtain it. There's also, it's not unusual at all in North Carolina for damages to be carved out. And that's really a function of the jurisdictional framework for summary ejection. Those actions are typically initiated in the lowest level court, which has a statutory cap on monetary damages that it could consider. So it's not at all typical for a party to bring a summary ejection action seeking possession, but to defer any question of monetary damages to a separate action, which would either be resolved through state or could be through federal courts. So just because Alex Lee should have the right, and if the injunction is vacated, we believe would have the right to terminate the lease and to start the summary ejection process doesn't mean that all of the damages that the parties have asserted against each other would have to be resolved as part of that same process. It could be done differently. What we think is important is that the court's legal error is corrected, that the injunction is vacated, that Alex Lee's hands are untied because they never should have been in the first place, and that we can start the process of lease termination if Alex Lee decides that that's the business decision that it wants to make once it's no longer bound by court order. So we're asking for the order to be vacated and for the order to be at the very least remanded to the court for further consideration. Unless you have any further questions, I'll take my seat. Thank you. Thank you very much. We will ask the clerk to adjourn court for the day and come down and greet counsel.
judges: Allyson K. Duncan, Barbara Milano Keenan, Albert Diaz